FRUGÉ, Judge ad hoc.
This suit was instituted by Associates Discount Corporation on a note secured by a chattel mortgage on one 1955 Plymouth automobile. The note was made payable to the order of Cagle Chevrolet, Inc. and endorsed by the payee to the order of Associates Discount Corporation, without recourse. The maker of the note is the defendant, Plerman • Washington, who executed the note. The defendant, Herman Washington, filed an answer generally denying all allegations of the petition, except admitting that he had signed a blank instrument as a “co-signer” and not as “principal”. The defendant, Herman Washington, further took the position of a plaintiff in a third-party action amplifying his defense that the note had been signed as a “co-signer” for one Wilfred Allison, and pleaded failure of consideration, fraud and misrepresentation. He prayed for a dismissal of the suit, and in the alternative, that if judgment be rendered against him, that the court render an identical judgment in favor of Herman Washington, and against Cagle Chevrolet, Inc.
The case was tried on the merits and the lower court, without written reasons, rendered judgment in favor of plaintiff, Associates Discount Corporation, and against the defendant, Herman Washing- ’ ton, and further rendered judgment dismissing plaintiff’s suit as to the third-party defendant, Cagle Chevrolet, Inc. as of non-suit. From this judgment, the plaintiff perfected this appeal to this court and the third-party defendant, Cagle Chevrolet, Inc., answers the appeal, alleging that the trial court’s judgment was erroneous as plaintiff’s suit should have been definitely dismissed as to it, rather than as of non-suit.
The facts reveal that one Wilfred Allison went to the used car lot of Cagle *390 Chevrolet, Inc. during the month of September, 1958 and talked to a salesman by the name of O. U. Jones about the purchase of a second-hand car. He selected a 1955 Plymouth and agreed to trade in a 1951 Dodge for $295 as a down payment to be applied on the purchase price. Jones took Allison’s application for credit on the unpaid balance. The application was presented to Associates Discount Corporation the next morning and Associates turned Allison’s credit down. Jones then called Allison to inform him that his application had been turned down because of his bad credit and advised him that it would be necessary to have someone sign as a co-signer with him. Allison then told Jones that he could get Herman Washington to co-sign with him and Associates was again contacted about Washington’s credit as a maker of the note, but would not take any paper with Allison’s name thereon.
Wilfred Allison and the defendant, Herman Washington, testified that they drove down to Cagle Chevrolet, Inc. together in the 1955 Plymouth automobile one or two days after Allison had previously signed the papers and after he was advised by Cagle Chevrolet, Inc. that Associates Discount Corporation would not approve his credit. They both testified that they met with Mr. Jones and that he was the only one present at the time that the defendant, Herman Washington, signed the note and chattel mortgage. Herman Washington, the defendant, stated that he signed a blank note and a blank chattel mortgage and was advised by Jones, the employee of Cagle Chevrolet, Inc. that he was cosigning with Herman Washington. He further stated that he was fully explained the details of the transaction, including the purchase price and that he would be liable therefor in the event that Allison did not pay. Washington admits that he was fully informed of the transaction, with the exception that he thought that he was co-signing with Allison and was not the sole maker of the note but that he was not informed that the title to the automobile would be in him.
O. U. Jones, H. B. Grayson, and Don Shetler, all employees of Cagle Chevrolet, Inc., testified on behalf of the third-party defendant, Cagle Chevrolet, Inc., and all admitted that the note and chattel mortgage which were signed by Herman Washington were signed in blank but all particulars of the transaction were explained to him, including mode of payment, total price, and that the title of the automobile would be in his, Washington’s name, because Associates Discount Corporation would not accept any note or paper by Wilfred Allison. Jones testified that he thoroughly explained the entire transaction to Washington and Allison — including purchase price, monthly installments, and that the title would be in Washington because the Finance Company would not take paper signed by Allison. As to the placing of the title in Washington, Jones took the matter up with Shetler, who again explained this matter to Washington and Allison. Shetler, Sales Manager for Cagle, testified that prior to Washington’s execution of the sale and mortgage but while Washington and Allison were talking to Jones, the problem was presented to him. He then told the parties it would be all right to sell the vehicle to Washington with the understanding that Allison would pay for it, but he wanted to make sure that Washington understood what he was getting into. Shetler therefore in the presence of Grayson, Jones Allison, and Washington carefully explained that title would be in Washington and that Washington would be solely responsible for making the payments. If Allison and Washington had some side agreement that was all right, but the sale was to Washington. Allison and Washington deny that this discussion took place. Shetler did not go over any other details of the contract and was not present when the papers were signed. Grayson’s testimony confirms that of Shetler’s in every particular.
*391 The evidence reveals that after the note and chattel mortgage were signed in blank by the defendant, they were filled in in the main office of Cagle Chevrolet, Inc.
Associates Discount Corporation alleges that it is a holder in due course and therefore immune to the defenses presented by the defendant. LSA-R.S. 7:52[1] defines a holder in due course of an instrument. The evidence reveals that the note in question, when received by Associates Discount Corporation, was complete and regular upon its face, that Associates became the holder of it before it was overdue and before the first payment on said note was due, that it took it in good faith and for value, and that when it was negotiated to Associates, it had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.
Counsel for defendant in his brief argued LSA-R.S. 32:706 in support of his contention that plaintiff was not a holder in due course as the defendant purchaser did not have a certificate of title to the vehicle at the time of the negotiation of the note. However, LSA-R.S. 32:706 was amended in 1954 prior to this transaction allowing the negotiation of notes secured by chattel mortgages prior to issuing of title certificates. Having concluded thusly, the only question pending is whether or not the employees and agents of Cagle Chevrolet, Inc. were guilty of such fraud, misrepresentation and failure of consideration as to entitle Herman Washington to acquire judgment against Cagle Chevrolet, Inc. The evidence reveals that the instruments involved and sued on herein were signed in blank by the maker as the sole signer and maker of the note. The defendant maker admits that he was explained the entire transaction, including purchase price, terms and etc., but was under the impression that he was signing as a co-maker or accommodation maker of the note and not as the sole maker.
LSA-R.S. 7:14 provides:
“§ 14. Filling blanks in incomplete instrument
“Where the instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima facie authority to fill up as such for any amount. In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. But if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time.” [2]
The trial Judge had the opportunity to see and hear the witnesses and, while he did not give written reasons for *392 Shis judgment, he must have believed the third-party defendant’s witnesses, who testified that they explained to the defendant that he was signing the note and chattel mortgage as sole maker and not as a comaker. The defendant admitted his signature; that he wanted to sign the note for Allison; that he knew the terms and conditions of the note; and the price to be inserted therein. The only thing he does deny is that he thought he was signing as a co-maker or co-signer and not as sole maker. Moreover, as co-maker he would be primarily liable in such a capacity the same as an original maker, and under the facts and circumstances of this case, he certainly could later proceed against Allison whom he was actually accommodating in these negotiations.
For the foregoing reasons, the lower court’s decision is affirmed as to the parties, Associates Discount Corporation and Herman Washington, and, as to the third-party action as between Herman Washington and Cagle Chevrolet, Inc., the judgment is amended to be a definitive judgment dismissing said Herman Washington’s demand as against Cagle Chevrolet, Inc.
AH costs of the appeal to be borne by the defendant-appellant, Herman Washington.
Amended and affirmed.

. “§ 52. Holder in due course; conditions under which taken
“A holder in due course is a holder who has taken the instrument under the following conditions:
“(1) That it is complete and regular upon its face;
“(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;
“(3) That he took it in good faith and for value;
“ (4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.”

. LSA-R.S. 6:956 requiring the completion of blanks prior to the execution of the contract did not go into effect until January 1, 1959.